EDGAR ROBINSON, Appellant, *v.* INSURANCE COMPANY OF
NORTH AMERICA, Respondent.

**Appeal — when reversal by the Appellate Division upon the law
unwarranted.**

The evidence and exceptions, on the trial of an action to recover on a
policy of fire insurance for damage to a vessel, examined and *held,* not
to warrant a reversal by the Appellate Division upon the law.
*Robinson* v. *Insurance Co. of North America,* 129 App. Div. 1, reversed.

(Argued February 22, 1910; decided March 15, 1910.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
November 27, 1908, which reversed a judgment in favor of
plaintiff entered upon a verdict and an order denying a motion
for a new trial and granted a new trial.

*Arnold Charles Weil* and *Walter S. Newhouse* for
appellant.

*William Harrison* and *Lawrence Kneeland* for respondent.

HAIGHT, J. This action was brought to recover damages
suffered by the plaintiff by reason of the partial burning of
his yacht "Ilderan" on the 12th day of December, 1906, off
Duck Island, while navigating the waters of Long Island
Sound on a trip from New Suffolk on Peconic Bay to Bay
Ridge in New York harbor.

The action was based upon a policy of insurance issued by
the defendant, by which the defendant undertook to insure the
yacht "Ilderan" from the third day of July, 1906, until the
third day of July, 1907, which contained a warranty by
the assured " that the within-named vessel shall be laid up and
out of commission from November 1st at noon until May 1st
at noon, during the currency of this policy." The complaint
alleged compliance on the part of the plaintiff with the pro-
vision of the policy, and second, that if a breach of the condi-
tions had been made, it was waived by the defendant. The
answer denied performance on the part of the plaintiff, and
also denied waiver of the condition embraced in the warranty.

At the conclusion of the trial the court submitted both questions to the jury. The verdict was in favor of the plaintiff and the order of the Appellate Division recites that the reversal was upon the law only ; that the facts had been examined and no error found therein. Under this provision of the order we are compelled to assume that the facts sustain the verdict, and that the reversal was based upon some error of law occurring upon the trial. Two opinions were written in the Appellate Division favoring a reversal of the judgment. In the first opinion it is said, " The plaintiff claimed that he laid her up (meaning the yacht) for the winter in October at New Suffolk, but deciding afterwards that that was an unsafe harbor, concluded to sail her to Bay Ridge and lay her up there. To do so he had to pass a large number of safe harbors on the Long Island and Connecticut shores. It may sound strange to those familiar with Peconic Bay and the harbor at New Suffolk that that harbor was an unsafe one for such a craft ; but, however that may be, it must be held, as matter of law, that the yacht was not laid up while taking the long and unnecessary sail to Bay Ridge, a distance of over one hundred miles. If the harbor she was laid up in became unsafe, it was not permissible to move her farther than the next safe harbor that had room for her. The large safe harbor at Greenport, Long Island, was only a few miles away. If it was permissible to sail her to Brooklyn, passing many large and safe harbors on the way, then why not to Newark or the Schuylkill ? There was certainly a limit, and it would be reached long before getting to Brooklyn. The question was one of law and not of fact." The evidence produced on behalf of the plaintiff tended to show that the yacht was laid up in New Suffolk harbor, but owing to a heavy storm that occurred about the first of December, the captain in charge concluded that the harbor was unsafe for the craft and decided to sail it to Bay Ridge, where he knew there was a safe harbor, and that it was during this voyage that the damages occurred. There was no evidence given upon the trial tending to show that there were other nearby harbors which were safe, or in which he could procure a space to lay up the vessel. It may be that a judge, in his judi-

cial district, may take judicial notice of the harbors and
the location thereof within such territory, under the authority
of *Hunter* v. *N. Y., O. & W. R. R. Co.* (116 N. Y. 615). But
this question we do not now determine. For even if the
judge may take judicial notice of the existence of harbors
within his jurisdiction, there still remains a question as to
whether at that season of the year, after many vessels of this
character had been laid up, there still remains a safe and avail-
able place within which this yacht could have been laid up.
This question, we think, presented a question of fact and not
a question of law. The learned judge also, in his opinion,
appears to have entertained the view that the trial judge
erred in not instructing the jury as to what would constitute
a waiver of the condition in the policy. With reference to
this contention we are unable to find any exception that raises
the question. If the attorney for the defendant had desired
to have the court more fully instruct the jury with reference
to the facts which would constitute a waiver, it was his duty
to present a request to that effect and take an exception in case
the court refused to make the charge. But nothing of that
kind appears to have occurred.

In the second opinion the learned justice devoted his atten-
tion chiefly to the question of waiver. He entertained the
view that there was evidence that supported a finding that
Mr. Crowell had authority to bind the defendant by what he
did, and, moreover, that his acts were authorized by the
manager of the insurance company with full knowedge of the
facts constituting the breach of warranty. But he appears
to have entertained the view that this case was brought
within the rule adopted in the case of *Draper* v. *Oswego Co.
Fire Relief Association* (190 N. Y. 12). In that case the
policy provided that the company would not be liable for any
loss resulting from an open fire built by the assured within
fifty feet from the insured building, and it was held that a
loss resulting from such a fire was not covered by the policy;
and consequently the doctrine of waiver had no application.
But it hardly appears to us that this rule can be invoked with
reference to the policy in question. It runs, as we have
seen, from the third day of July, 1906, until the third day of

July, 1907. The assured warrants that the vessel should be laid up and out of commission from November first at noon until May first at noon. The policy, however, continues to be in force during the time that the vessel is laid up. In case a fire should occur upon the dock to which the vessel had been fastened, and thus be communicated to the yacht, resulting in its destruction, it could not well be claimed that the company would not be liable for such damages. If the yacht had been laid up in accordance with the requirements of the warranty, and by reason of a heavy storm the place had become dangerous, the master would be justified in removing the vessel from its place of danger to the nearest safe harbor that had room for her, without violating the warranty, for it would be an act in the interest of the insurance company as well as the owner of the craft. As we have seen, evidence had been given on behalf of the plaintiff tending to show that that was the cause of the removal of the yacht from the New Suffolk harbor. Evidence also was given on behalf of the plaintiff tending to show that after the fire had occurred it was extinguished by the T. A. Scott Company, who took possession of the yacht and towed it to New London and there held it for salvage; that thereupon a contract was entered into by Crowell, who was sent there by the manager of the defendant, by which it was agreed that the insurance company should take the yacht into its care and tow it to Bay Ridge for repairs; that the amount of the salvage that the Scott Company was entitled to should be determined by the National Board of Fire Underwriters, and pursuant to this arrangement the defendant did cause the yacht to be towed to Bay Ridge. It consequently follows that the determination of the question of waiver depended upon the evidence and became a question of fact. It remains to be determined whether there are exceptions that justified a reversal.

When the plaintiff rested, the defendant's counsel moved to dismiss the first cause of action alleged in the complaint, upon the ground that it appeared that there was a breach of the warranty that the vessel should be laid up from the first of November to the first of May. No motion was then made to dismiss as to the second cause of action alleged in the com-

plaint, which was the one pertaining to waiver. The decision of the court was reserved until the end of the case, and no exception was taken. At the conclusion of the evidence the defendant's counsel renewed his motion and also moved to dismiss the complaint as a whole, on the ground that there was no evidence in the case upon which the jury would be justified in finding a waiver or a breach of warranty. The refusal of the court to grant this request has been already answered in the above discussion.

The court charged the jury that if the boat was, at the outset, put in a reasonably safe and permanent place, and then, through some emergency which might not have been foreseen by a reasonable waterman, she was moved to another place of safety, that it would not be a breach of the policy. To this charge an exception was taken by the defendant's counsel, but he neglected, however, to call the attention of the court to the point that "another place" should be confined to the nearest or most available place of safety. It, therefore, does not appear to us that the exception called for a reversal. During the trial the defendant's manager was sworn as a witness in its behalf, and was asked if, at the time he directed Captain Crowell to proceed to New London for the purpose of looking after the injured yacht, "what information had you, or had you any information as to the terms of the policy of the insurance." This was objected to and the objection was sustained. The policy had been issued by him and he was chargeable with knowledge as to its contents. If he had forgotten the terms, he should have refreshed his recollection before proceeding to take the yacht into his custody and control. It is not, therefore, apparent that a reversal could properly be based upon the exception to the exclusion of this evidence. Our conclusion, therefore, is that the Appellate Division improperly reversed upon a question of law.

The order of the Appellate Division should be reversed, and the judgment entered upon the verdict affirmed, with costs in both courts.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and CHASE, JJ., concur; GRAY, J., dissents.

Order reversed, etc.